**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
David A. Blansky, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

JOE'S FRIENDLY SERVICE & SON INC.,
d/b/a THATCHED COTTAGE AT THE BAY,

                                    Debtor.
-----------------------------------------------------------------x
In re:

THATCHED COTTAGE LP,


                                    Debtor.
-----------------------------------------------------------------x
R. KENNETH BARNARD, IN HIS CAPACITY AS
THE CHAPTER 7 TRUSTEE OF THE ESTATES OF
JOE'S FRIENDLY  SERVICE & SONS. INC., D/B/A
THATCHED  COTTAGE AT THE BAY AND
THATCHED COTTAGE LP,

                                    Plaintiff,

        -against-

THE TOWN OF HUNTINGTON, THE TOWN COUNCIL
OF THE TOWN OF HUNTINGTON, THE DEPARTMENT
OF PUBLIC SAFETY OF THE TOWN OF HUNTINGTON,
THE DEPARTMENT OF ENGINEERING SERVICES OF
THE TOWN OF HUNTINGTON, JOSEPH F. CLINE,
DIRECTOR OF THE DEPARTMENT OF ENGINEERING
SERVICES OF THE TOWN OF HUNTINGTON, RICHARD
VACCHIO, SENIOR BUILDING INSPECTOR IN THE
DEPARTMENT OF ENGINEERING SERVICES OF THE
TOWN OF HUNTINGTON, TERRY MCNALLY, CHIEF
FIRE MARSHALL OF THE TOWN OF HUNTINGTON,
KENNETH LINDAHL, FORMER DIRECTOR OF THE
DEPARTMENT OF PUBLIC SAFETY OF THE TOWN OF
HUNTINGTON, AND  JANET RINKER, A DIVISION
HEAD IN THE DEPARTMENT OF PUBLIC SAFETY OF
THE TOWN OF HUNTINGTON,

                                    Defendants.
-----------------------------------------------------------------x

Chapter 7
Case No.: 14-70001-REG




Chapter 7
Case No.: 14-70002-REG




Adv Pro. No.









**COMPLAINT**

1

R. Kenneth Barnard, the Chapter 7 Trustee (the "<u>Trustee</u>" or "<u>Plaintiff</u>") of the jointly administered Chapter 7 estates of Joe's Friendly Service & Sons, Inc. d/b/a Thatched Cottage at the Bay ( "<u>Joes' Friendly</u>" or the "<u>Debtor</u>") and Thatched Cottage LP ("<u>Thatched LP</u>" or "<u>Co-Debtor</u>") (collectively with the Debtors, the "<u>Debtors</u>"), by and through his undersigned counsel, as and for his complaint against defendants The Town of Huntington (the "<u>Town</u>"), The Town Counsel of the Town of Huntington (the "<u>Town Council</u>"), the Department of Public Safety of the Town of Huntington (the "<u>Public Safety Department</u>"), the Department of Engineering Services of the Town of Huntington (the "<u>Engineering Services Department</u>"), Joseph F. Cline ("<u>Cline</u>"), Director of the Engineering Services Department, Richard Vacchio ("<u>Vacchio</u>"), Senior Building Inspector in the Engineering Services Department; Terry McNally ("<u>McNally</u>"), Chief Fire Marshall of the Town, Kenneth Lindahl ("<u>Lindahl</u>"), former Director of the Public Safety Department; and Janet Rinker ("<u>Rinker</u>"), a Division Head in the Public Safety Department (collectively, the "<u>Defendants</u>"), alleges as follows:

## <u>NATURE OF THE PROCEEDING</u>

1.      The Plaintiff brings this action to recover compensatory and punitive damages under the United States Constitution and New York law against the Defendants for their unconstitutional deprivation of the Plaintiff's due process rights and other constitutional rights and for violation of the automatic stay.

2.      The Plaintiff seeks reasonable attorneys' fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. § 1983, predicated upon 42 U.S.C. § 1988, on account of the Defendants' violation of the automatic stay

## JURISDICTION AND VENUE

3.      Since this action arises under the Chapter 7 bankruptcy case of the Debtors, pending in the United States Bankruptcy Court, Eastern District of New York (the "Court"), has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      The Court also has jurisdiction over the claims arising under the Constitution of the United States pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      The statutory predicates for the claims asserted herein are Sections 105 and 362 of Title 11 of the United States Code (the "Bankruptcy Code"), 42 U.S.C. § 1983, 42 U.S.C. § 1988, New York common law, and Bankruptcy Rules 6009 and 7001.

6.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), and (b)(2)(O).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

8.      Alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because substantially all of the events or omissions giving rise to the claim occurred in Suffolk County, New York and the Defendants' actual place of business and/or employment is within the Eastern District of New York.

9.      The Plaintiff possesses standing to commence and maintain this action by virtue of his appointment by the Office of the United States Trustee as the representative of the Debtors and their respective estates, and in accordance with his authority under New York Business Corporation Law § 720(b) and the New York Partner Law.

## BACKGROUND

10.     On January 2, 2014 (the "Filing Date"), the Debtors filed separate voluntary filings for reorganization under Chapter 11 of the Bankruptcy Code with the Clerk of the Court.

11.     On January 10, 2014, the Court entered an Order authorizing the joint administration of the Debtors' cases.

12.     By Order dated July 3, 2014 the Office of the United States Trustee was directed to appoint a Chapter 11 trustee in the Debtors' cases.

13.     By Notice dated July 4, 2014, R. Kenneth Barnard was appointed as the Chapter 11 Operating Trustee.

14.     By Order dated June 24, 2015, the Court converted the Debtors' cases from Chapter 11 to Chapter 7 of the Bankruptcy Code.

15.     By Notice dated June 24, 2015, R. Kenneth Barnard was appointed as the interim Chapter 7 Trustee, has since duly qualified and is now the permanent Trustee administrating these estates.

## THE PARTIES

16.     At all times relevant, the Town was and is a municipality and/or a municipal corporation duly organized and existing in the County of Suffolk under the municipal law and other laws of the state of New York, having its principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

17.     At all times relevant, the Town Council was and still is a municipal body organized and existing under the laws of the State of New York with its principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

18.     At all times relevant, the Public Safety Department was and still is a municipal department organized and existing under the laws of the State of New York with its principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

19.     At all times relevant, the Engineering Services Department was and still is a municipal department organized and existing under the laws of the State of New York with its principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

20.     At all times relevant, Cline was the Director of the Engineering Services Department and a municipal officer and employee with a principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

21.     At all times relevant, Vacchio was the Senior Building Inspector in the Engineering Services Department and a municipal officer and employee with a principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

22.     At all times relevant, McNally was the Chief Fire Marshall of the Town and a municipal officer and employee with a principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743.

23.     At all times relevant, Lindahl was the Director of the Public Safety Department and a municipal officer and employee with a principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743, and an individual residing at 30 Lawrence Drive, Brightwaters, New York 11718.

24.     At all times relevant, Rinker was a Division Head in the Public Safety Department, a municipal officer and employee with a principal place of business at Town Hall, 100 Main Street, Huntington, New York 11743, and the sister of Ralph Colamussi ("Colamussi").

25.     With the exception of Cline and Vacchio, each of the individual defendants has been sued in his or her official capacity.

26.     Cline and Vacchio are named in both of their official and individual capacities.

## THE FACTS

27.     Prior to the Filing Date, at all times relevant, Colamussi was the managing or general partner and 99% partner of Thatched LP.

28.     Prior to the Filing Date, at all times relevant, Colamussi was the President of Joes' Friendly and its sole shareholder.

29.     Prior to the Filing Date, at all times relevant, Colamussi was the party in control of the Debtors and their operations.

30.     As of the Filing Date, Thatched LP was the owner of the real properties known as, and located at, 445 East Main Street, Centerport, New York, District: 0400, Section 044.00, Block 01.00 and Lot 010.001 on the Land & Tax map of the County of Suffolk (the "445 East Property") and the adjacent parking lot located on 25A, Centerport, New York, Section 044.00, Block 03.00 and Lot 021.000 on the Land & Tax map of the County of Suffolk (the "Lot" along with the 445 East Property are referred to herein as the "Real Properties").

31.     The Real Properties are situated on the water of the north shore of Long Island overlooking Centerport Harbor.

32.     As of the Filing Date, a catering banquet facility was operated by Joe's Friendly was situated on the 445 East Property.

33.     Following the commencement of these cases, the Debtors continued operating the Debtors as debtors in possession.

34.     After a few months, Bethpage Federal Credit Union ("BFCU") determined that it did not wish to continue its relationship with Colamussi and refused to consent to the further use of cash collateral unless a Chief Restructuring Officer (the "CRO") was appointed.

35.     The Debtors were then approached by Gino Scotto ("Scotto"), a longtime owner of catering/restaurant facilities.

36.     On March 11, 2014, as part of the final order authorizing the use of cash collateral, the Debtors agreed to retain Scotto as the CRO to take over management of the Debtors' operations.

37.     Scotto was to remain in that position until the case was converted or an operating Trustee appointed.

38.     Upon the appointment of the Plaintiff on July 4, 2014, Scotto ceased to act as the Debtors' CRO.

39.     Shortly after his appointment, the Plaintiff, through his retained professionals, began marketing the Real Properties and the Debtors' remaining assets for sale.

40.     On or about May 29, 2014, the Debtors  applied to the Town for a permit allowing the operation of the Real Properties as a place of assembly of 501 to 1000 people.

41.     Upon information and belief, a Town fire marshal conducted an inspection of the Real Properties in connection with the Debtors' application on June 3, 2014.

42.     On July 15, 2014, Newsday published an article titled, "Centerport's Thatched Cottage to Close Oct. 6", in which it reported that operations at the Real Properties would cease on October 6, 2014.

43.     On August 18, 2014, McNally and Cline signed a permit authorizing the Plaintiff to operate the Real Properties as a place of assembly with a capacity of 501 to 1000 people.

44.    On September 19, 2014, Newsday published an article titled, "Thatched Cottage Auction On Wednesday", in which it reported that a public auction sale was scheduled for September 24, 2014.

45.    After extensive advertising, on September 24, 2014, a public sale took place at the premises.

46.    After competitive bidding, Yama Raj was the successful bidder at the public sale for the Real Properties, having bid the sum of $4,650,000.

47.    That same day, Newsday published an article titled, "Thatched Cottage Sold To Bidder for $4.65 Million", in which it reported the identity of the winning bidder at the auction.

48.    The September 24, 2014 Newsday article also reported that on the date prior to the auction sale Colamussi had attempted to commit suicide by drenching himself and his vehicle with gasoline in a restaurant parking lot.

49.    Mr. Raj's bid was the highest and best offer received by the Plaintiff.

50.    In accordance with the order authorizing the sale, Mr. Raj was also required to tender a 4% buyer's premium in the amount of $186,000 for a total purchase price of $4,836,000.

51.    On September 29, 2014, a hearing was held whereby the Plaintiff sought the Court's confirmation of the sale of the Real Properties and assets to Mr. Raj in accordance with the terms and conditions of sale.

52.    The catering facility ceased operations on October 6, 2014 and, within days thereafter, locked its doors.

53.    The Court confirmed the sale in an order dated October 16, 2014 (the "Sale Confirmation Order").

54.     By the time the Court entered the Sale Confirmation Order, operations at the Real Properties had ceased and the catering hall was closed.

55.     The Plaintiff required that the closing occur on or before on November 15, 2014, i.e. within thirty (30) days from the entry of the Sale Confirmation Order.

56.     On October 16, 2014, a local paper, The Observer, published an article referencing two reports prepared by Galli Engineering, P.C. ("Galli"), titled, "Thatched Cottage Still Racked By Hurricane Sandy".

57.     On or about October 23, 2014, the Concerned Citizens of Centerport sent a letter to the Town concerning extensive storm damage to the Real Properties (the "CCOC October 23 Letter").

58.     The CCOC October 23 Letter was received by the Town Supervisor on October 24, 2014 and the Engineering Services Department on October 29, 2014.

59.      On or about November 7, 2014, the Concerned Citizens of Centerport sent a second letter to the Town (the "CCOC November 7 Letter").

60.     The CCOC November 7 Letter was received by the Engineering Services Department on November 13, 2014.

61.     The CCOC November 7 Letter referenced the October 16, 2014 article published in The Observer.

62.     At the request of Mr. Raj, the Plaintiff consented to an extension of the closing date to November 24, 2014, with the express understanding that no further extensions would be granted and that the closing must occur on or before such date.

63.     On or about November 13, 2014, Colamussi personally delivered certain reports, letters and e-mails to the Fire Marshall's office, which documents included the October 16, 2014 article published in The Observer.

64.     These documents included two reports prepared by Galli arising from visits to the Real Properties on July 29, 2014 and August 15, 2014.

65.     All of documents delivered by Colamussi were forwarded to Cline on or about November 14, 2014.

66.     Following receipt of the documents delivered by Colamussi, Cline, McNally and Vacchio met to discuss the documents and the Real Properties.

67.     At that meeting, Cline, McNally and Vacchio decided to place a placard at the Real Properties.

68.     Upon information and belief, on November 17, 2014, Betty Walsh ("Walsh"), Assistant to the Town Supervisor and Emergency Preparedness Manager for the Town, had a telephone call with Cline in which they discussed placarding the Real Properties.

69.     On November 17, 2014, Walsh sent an e-mail to Steven A. Haber ("Haber"), Executive Assistant to the Planning Director in the Town Planning Department, advising him of her phone call with Cline and the placarding of the Real Properties.

70.     In a responsive e-mail transmitted on November 17, 2014, Haber referenced to the media attention relating to the Real Properties.

71.     On November 18, 2014 at 1:47 pm, Mr. Raj's counsel e-mailed Town Deputy Attorney Glascock and reported to him that: (a) he had spoken to Cline about the items of concern in the report; (b) Mr. Raj already had an engineer inspect; (c) Mr. Raj was prepared to make repairs needed to satisfy the Town; (d) the report overstated the conditions existing at the

Real Properties; and (e) Mr. Raj was prepared to incorporate language into the license agreement to address the Town's concerns.

72.     On November 20, 2014, four days before the Debtors' scheduled closing on the sale of the Real Properties, Vacchio affixed a placard (the "Placard") on the Debtors' building and declared the Real Properties unsafe and unfit for human habitation pursuant to the Code of the Town of Huntington.

73.     Vacchio was only at the Real Properties for a few minutes for the exclusive purpose of placing the Placard on the Real Properties and did not conduct any inspection at that time.

74.     Vacchio completed an inspectors report stating, "[d]ue to Engineers certificate and reports from more than one firm.  Structural integrity is questionable.  Not to be used or occupied until further notice."

75.     The Town provided copies of the reports and letters delivered by Colamussi to Mr. Raj's counsel on November 21, 2014.

76.     The Town did not advise the Plaintiff of the existence of the reports and letters or provide copies of the reports and letters to the Plaintiff until December 18, 2015, as part of its response to a Court order.

77.     Mr. Raj declined to proceed with the sale in view of the Town's unlawful placement of the Placard.

78.     Litigation then ensued between Mr. Raj and the Plaintiff in this Court over the deposit made in connection with his purchase of the Real Properties.

79.     On February 13, 2015, the Plaintiff served a notice of claim on the Town (the "Notice of Claim") asserting claims arising from the placement of the Placard.

80.    On March 11, 2015, upon application of the Plaintiff, the Court entered an order pursuant to Bankruptcy Rule 2004 directing the production of documents by and examination of Cline, Vacchio, Lindahl, Rinker, Galli and any other employees of the Town or Galli as the Plaintiff deemed necessary (the "Rule 2004 Order").

81.    The Rule 2004 Order, together with subpoenas, were served by the Plaintiff on each of the witnesses subject to the Rule 2004 Order.

82.    Galli produced documents and, thereafter, Richard Galli, P.E., appeared on behalf of Galli to be examined under oath on November 11, 2015 in accordance with the Rule 2004 Order.

83.    The Plaintiff received documents from the Town on December 18, 2015 under the Rule 2004 Order.

84.    Pursuant to an order of the Court entered on January 4, 2016, Cline, Vacchio, Rinker and Lindahl appeared and were examined between February 4 and February 8, 2016.

85.    The Town produced additional documents under the Rule 2004 Order on February 11, 2016.

86.    Galli was retained by Scotto subsequent to the appointment of the Plaintiff as operating Chapter 11 Trustee for the purpose of inspecting the Real Properties as Scotto was interested in bidding on the Real Properties.

87.    Without the permission or knowledge of the Plaintiff, Scotto and Galli entered onto the Real Properties on July 29, 2014 for the purpose of Galli inspecting the Real Properties.

88.    Galli reported its proposed findings to Scotto prior to finalizing its initial report and incorporated Scotto's comments into the final report.

89.     Scotto had Galli falsely state that the report arising from the July 29, 2014 visit was being prepared for Manuel Varveris, Hamholding Corp., although Galli was not retained by Mr. Varveris or Hamholding Corp. and had no contact with either.

90.     Galli trespassed on the Real Properties a second time on August 15, 2014 for the purpose of conducting a second inspection of the Real Properties and thereafter issued a second report.

91.     The second Galli report also falsely stated that it was being prepared for Manuel Varveris, Hamholding Corp.

92.     Galli also met with Scotto and Colamussi to discuss his findings and the Real Properties.

93.     The problems identified by Galli in its reports arose from Hurricane Sandy, which occurred over a year and a half prior to Galli's unauthorized visits to the Real Properties.

94.     Upon information and belief, the Real Properties had a certificate of occupancy and were not the subject of any code violations on the date that Colamussi delivered the documents to the Fire Marshall's office, the date the Town decided to place the Placard at the Real Properties or the date on which the Placard was placed at the Real Properties.

95.     The Town failed to comply with the Code of the Town of Huntington by failing to inspect the Real Properties to confirm that structural issues at the Real Properties created a safety risk to guests at the catering facility before placing the Placard.

96.     Upon information and belief, with the exception of the placement of the Placard at the Real Properties, there has never been an instance in the last four years when a placard was placed without a Town code enforcement officer first inspecting the subject property.

13

97.    The Town relied on several month old reports prepared by Galli, an engineer hired by a prospective bidder who was trespassing at the Real Properties, which reports were delivered to the Town by Colamussi, the former owner of the Debtors and an individual reported in the media as having attempted suicide the day prior to the auction sale.

98.    The Town failed to contact the Plaintiff at any time prior to the placement of the Placard, who was the party vested with all ownership rights into the Real Properties, concerning any concerns about the safety of the Real Properties before placing the Placard.

99.    The Town failed to provide the Plaintiff with notice of any violation, issue any summons concerning any condition on the Real Properties to the Plaintiff or provide notice to the Plaintiff that he should remove, remedy or abate any unsafe, hazardous or dangerous condition or nuisance existing at the Real Properties

100.    The Town failed to request access to the Real Properties from the Plaintiff before placing the Placard.

101.    The Town failed to notify the Plaintiff of its intention to place the Placard.

102.    Upon information and belief, the Town provided notice to Mr. Raj's counsel of its intention to place the Placard.

103.    The Town had no lawful basis or grounds for placing the Placard or declaring the Real Properties to be unsafe and unfit for human habilitation.

104.    The Town knew the Real Properties were no longer being used to host events and were being monitored 24 hours, seven days a week, by private security when it placed the Placard and declared the Real Properties to be unsafe and unfit for human habilitation.

105.    At all times relevant, McNally passed the Real Properties twice a day, once on the way to work and once returning from work.

106.    The Town knew Mr. Raj was planning extensive renovations after the purchase and to fix problems identified at the Real Properties.

107.    The Town had numerous communications with Mr. Raj's counsel and his architect prior to the placement of the Placard.

108.    Upon information and belief, on or about October 16, 2014, Haber met with Mr. Raj and his architect to discuss what would be required for the catering facility to reopen.

109.    On or about October 24, 2014, Cline, Town Deputy Attorney Glascock, Town Planning Director Anthony Aloisio, Town Deputy Supervisor Patricia Del Col, Mr. Raj's attorney and Mr. Raj's architect met to discuss Mr. Raj's plans for the Real Properties and the terms of a proposed license agreement.

110.    As a result of the placement of the Placard and failure of Mr. Raj to close, the Plaintiff was compelled to maintain and secure the Real Properties until January 2, 2015, the date on which he conveyed title to the nominee of the second highest bidder at the auction, BCFU.

111.    After placing the Placard, the Town did not provide the Plaintiff with notice of any violation, issue any summons concerning any condition on the Real Properties to the Plaintiff or provide notice to the Plaintiff that he should remove, remedy or abate any unsafe, hazardous or dangerous condition or nuisance existing at the Real Properties.

112.    No further steps were taken by the Town with respect to the Real Properties while they continued to be assets of these estates.

113.    The Plaintiff was never afforded an administrative hearing before the Town Board or a duly appointed administrative hearing officer prior to or after the placement of the Placard.

114.    The Town Board never made any findings that the Real Properties had become unsafe, unsanitary or hazardous.

115.    Upon information and belief, no structural repairs have been made to the Real Properties since the placement of the Placard.

116.    Upon information and belief, a Town code enforcement officer has not inspected the Real Properties since the placement of the Placard.

117.    The catering facility has not collapsed since the placement of the Placard, notwithstanding that it was placed on the Real Properties more than a year ago.

118.    As a result of the placement of the Placard and failure of Mr. Raj to close, the Plaintiff has been caused to incur extensive legal fees and expenses.

119.    At least thirty days have elapsed since the Notice was filed and before this complaint was filed.

120.    The Defendants have neglected to or refused to adjust or satisfy the Plaintiff's claim.

121.    The Plaintiff has appeared at a hearing held under Municipal Law § 50-h to answer questions concerning the Notice prior to commencing this action.

122.    This action has been timely filed in accordance with General Municipal Law § 50-i.

### FIRST CLAIM FOR RELIEF
(Willful Violation of the Automatic Stay - 11 U.S.C. § 362(k))

123.    The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "122" as if set forth fully herein.

124.    Upon information and belief, on and prior to the date the Placard was placed at the Real Properties, the Defendants had actual knowledge of the Debtors' bankruptcy filing.

125.    Upon information and belief, on and prior to the date the Placard was placed at the Real Properties, the Defendants had actual knowledge that the Debtors' bankruptcy case was ongoing.

126.    Upon information and belief, on and prior to the date the Placard was placed at the Real Properties, the Defendants had actual knowledge that the Real Properties constituted property of the Debtors' estate.

127.    The Defendants knew or should have known of the appointment of the Plaintiff as operating Chapter 11 Trustee of the Debtors.

128.    Upon information and belief, on and prior to the date the Placard was placed at the Real Properties, the Defendants had actual knowledge that the automatic stay applied to all property of the Debtors' estates.

129.    Upon information and belief, on and prior to the date of the Placard was placed at the Real Properties, Defendants did not maintain a good faith belief that Section 362(h) of the Bankruptcy Code applied.

130.    By placing the Placard, the Defendants willfully violated the automatic stay.

131.    The Defendants' willful violation of the automatic stay have injured the Plaintiff, on behalf of the Debtors' estates, in an amount to be determined at trial, plus attorneys' fees and costs.

132.    By reason of the foregoing, the Plaintiff is entitled to the entry of an order and judgment, under § 362(k) of the Bankruptcy Code, against the Defendants for damages in an amount to be determined at trial, plus interest thereon from the date of the complaint, attorneys' fees and costs, and punitive damages, as well as such other amounts as may be determined by the Court.

## SECOND CLAIM FOR RELIEF
(Tortious Interference with Contractual Relations)

133.    The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "132" as if set forth fully herein.

134.    The Plaintiff and Mr. Raj entered into a Memorandum of Sale providing for the purchase and sale of the Real Properties pursuant to the terms and conditions approved by the Court.

135.    The Memorandum of Sale executed by the Plaintiff and Mr. Raj, was a valid Contract for the purchase and sale of the Real Properties.

136.    The sale of the Real Properties was anticipated to benefit the Debtors' estates and their creditors, including BFCU.

137.    The Defendants were aware of the existence of the Contract through, inter alia, multiple public sources, as well as through Colamussi's relatives and/or associates who were/are official(s) and/or employee(s) of the Town.

138.    The Defendants knew of the Contract through communications had by the Town with Mr. Raj's counsel and architect ahead of the placement of the Placard concerning, among other things a license agreement and improvements Mr. Raj proposed to make to the Real Properties.

139.    Upon information and belief, the Defendants used wrongful means to induce Mr. Raj to breach the Contract, including, inter alia, failing to follow any of the procedures set forth in the Code of the Town of Huntington prior to placing the Placard on the Real Properties.

140.    At all relevant times, there was no real or legitimate emergency or fear that the building on the Real Properties would collapse, particularly since events were no longer being

held at the Real Properties and it had been closed to the public prior to the placement of the Placard.

141.    The issues observed by Galli were the result of a storm that occurred over a year and a half earlier.

142.    At all relevant times prior to the placement of the Placard on the Real Properties, there was no collapse of the building on the Real Properties, which building was fully operational until cessation of operations solely due to financial conditions.

143.    The lack of any exigent circumstances at the Real Properties is evidenced by, inter alia, the fact that there has been no collapse of the building on the Real Properties despite numerous heavy rains and snowstorms over the nearly two year period since the Placard was placed on the Real Properties.

144.    The catering facility had operated with affairs hosting hundreds of people, several times a week, for years since Hurricane Sandy.

145.    The Real Properties were vacant, closed and patrolled by private security at the time the Placard was placed.

146.    Upon information and belief, the Defendants were aware or should have known that placement of the Placard on the Real Properties would impede the sale of the Real Properties and cause Mr. Raj to breach the Contract.

147.    The placement of the Placard produced the desired result as Mr. Raj breached the Contract by refusing to close on the sale of the Real Properties.

148.    The Defendants wantonly or recklessly disregarded the Plaintiff's rights

149.    By reason of the foregoing, the Plaintiff is entitled to an order and judgment against the Defendants for damages in an amount to be determined at trial, plus interest thereon

from the date of the complaint, attorneys' fees and costs, and punitive damages, as well as such other amounts as may be determined by the Court.

## THIRD CLAIM FOR RELIEF
(Negligence)

150.    The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "149" as if set forth fully herein.

151.    The Defendants' placement of the Placard on the Real Properties was done without prior inspection or any independent due diligence being conducted by the Defendants.

152.    The Defendants' placement of the Placard on the Real Properties was done without any level of due or ordinary care.

153.    The Defendants owed a duty to the Plaintiff, as the owner of the Real Properties, to uphold laws and regulations and to enforce them fairly and with due care.

154.    The Defendants breached the duty of care owed to the Plaintiff.

155.    The Defendants disregarded their obligations under the Code of the Town of Huntington.

156.    The Defendants' breach of duty of care to the Plaintiff and placement of the Placard on the Real Properties was the proximate cause of Mr. Raj's refusal to take title to the Real Properties and cancellation of the Contract.

157.    It was foreseeable that Mr. Raj would refuse to take title to the Real Properties once the Town placed the Placard on the Real Properties.

158.    The Plaintiff has been damaged by the Defendants' negligence.

159.    By reason of the foregoing, the Plaintiff has been damaged in an amount to be proven at trial.

## FOURTH  CLAIM FOR RELIEF
### (42 U.S.C. § 1983)

160.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "159" as if set forth fully herein.

161.    The Defendants acted under color of law when it placed the Placard on the Real Properties.

162.    The language of the Placard stated that it is ". . .pursuant to the Code of the Town of Huntington."

163.    Ownership of the Real Properties was vested in the Plaintiff at the time he entered into the Memorandum of Sale and the Placard was placed on the Real Properties.

164.    The Plaintiff has been deprived of the full use and enjoyment of the Real Properties due to the placement of the Placard.

165.    Mr. Raj declined to close on the sale of the Real Properties due to the placement of the Placard and the Defendants' refusal to remove the Placard prior to the scheduled closing.

166.    The Defendants' placement of the Placard on the Real Properties was done without any due diligence or due care.

167.    The Defendants' placement of the Placard on the Real Properties was done without any compliance with the Code of the Town of Huntington, including, but not limited to, Code § 156, et. seq., and  § 191, et. seq.

168.    The Placard was placed on the Real Properties without any formal notice or due process.

169.    No opportunity to be heard was afforded to the Plaintiff either before or after placement of the Placard on the Real Properties.

170.    The Plaintiff was deprived of procedural due process due to the lack of notice provided by the Defendants prior to the placement of the Placard on the Real Properties.

171.    The Plaintiff was deprived of substantive due process due to the failure of the Defendants to abide by laws and regulations either prior to or after placement of the Placard on the Real Properties.

172.    Upon information and belief, the Code of the Town of Huntington was selectively enforced against the Real Properties due to, inter alia, the incompetence of the Defendants and their intent to assist Colamussi in his plan to prevent or hinder the sale of the Real Properties to a third party.

173.    The Plaintiff has been deprived of his full property interests in the Real Properties by reason of the placement of the Placard under color of law.

174.    The Plaintiffs' property interests in the Real Properties were negatively affected by the Placard.

175.    By reason of the foregoing, the Plaintiff has been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
(Attorneys' Fees under 42 U.S.C. § 1988)

176.    The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "175" as if set forth fully herein.

177.    42 U.S.C. § 1988 authorizes the award of reasonable attorney's fees in an action to enforce a claim made under 42 U.S.C. § 1983 as part of costs to the prevailing party.

178.    The Plaintiff's fourth claim for relief is predicated upon 42 U.S.C. § 1983.

179.    By reason of the foregoing, the Plaintiff is entitled to reasonable attorneys' fees in connection with this action as part of the costs awarded to the prevailing party.

**WHEREFORE**, the Plaintiff demands judgment as follows:

a.      on the first claim for relief, as against the Defendants in an amount to be determined at trial;

b.      on the second claim for relief, as against the Defendants in an amount to be determined at trial;

c.      on the third claim for relief, as against the Defendants in an amount to be determined at trial;

d.      on the fourth claim for relief, as against the Defendants in an amount to be determined at trial;

e.      on the fifth claim for relief, as against the Defendants for reasonable attorneys' fees, costs and disbursements, in an amount to be determined at trial;

f.      and for such other further and different relief as the Court deems just and proper.

Dated: Wantagh, New York
        February 16, 2016

                          **LAMONICA HERBST & MANISCALCO, LLP**
                          Counsel to R. Kenneth Barnard,
                          the Chapter 7 Bankruptcy Trustee

               By:      _s/ David A. Blansky_
                          David A. Blansky, Esq.
                          Jacqulyn S. Loftin, Esq.
                          Partners of the Firm
                          3305 Jerusalem Avenue, Suite 201
                          Wantagh, New York 11793
                          (516) 826-6500

*M:\Documents\Company\Cases\Thatched Cottage LP\TOH Lawsuit\Thatched Complaint.FINAL.docx*