UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

Chapter 7
Case No. 14-70001-reg

JOE'S FRIENDLY SERVICE & SON, INC.,
d/b/a THATCHED COTTAGE AT THE BAY,

Debtor.
----------------------------------------------------------------x

In re:

THATCHED COTTAGE LP,

Chapter 7
Case No. 14-70002-reg

Debtor.
----------------------------------------------------------------x

R. KENNETH BARNARD, IN HIS CAPACITY AS THE CHAPTER 7 TRUSTEE OF THE ESTATES OF JOE'S FRIENDLY SERVICE & SON, INC., d/b/a THATCHED COTTAGE AT THE BAY AND THATCHED COTTAGE LP,

Adv. Pro. No. 16-8025-reg

Plaintiff,

-against-

THE TOWN OF HUNTINGTON, THE TOWN COUNCIL OF THE TOWN OF HUNTINGTON, THE DEPARTMENT OF PUBLIC SAFETY OF THE TOWN OF HUNTINGTON, THE DEPARTMENT OF ENGINEERING SERVICES OF THE TOWN OF HUNTINGTON, JOSEPH F. CLINE, DIRECTOR OF THE DEPARTMENT OF ENGINEERING SERVICES OF THE TOWN OF HUNTINGTON, RICHARD VACCHIO, SENIOR BUILDING INSPECTOR IN THE DEPARTMENT OF ENGINEERING SERVICES OF THE TOWN OF HUNTINGTON, TERRY MCNALLY, CHIEF FIRE MARSHALL OF THE TOWN OF HUNTINGTON, KENNETH LINDAHL, FORMER DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY OF THE TOWN OF HUNTINGTON, AND JANET RINKER, A DIVISION HEAD IN THE DEPARTMENT OF PUBLIC SAFETY OF THE TOWN OF HUNTINGTON,

Defendants.

-----------------------------------------------------------------x

**MEMORANDUM DECISION**

This matter arises in the jointly-administered cases of Joe's Friendly Service & Son, Inc. d/b/a Thatched Cottage at the Bay ("Joe's Friendly") and Thatched Cottage LP ("Thatched LP") (collectively, the "Debtors"). An adversary proceeding was commenced by R. Kenneth Barnard, the Chapter 7 Trustee ("Trustee" or the "Plaintiff") against the Town of Huntington (the "Town"), the Town Council, the Town Department of Public Safety, the Town Department of Engineering Services, Joseph F. Cline, Director of the Town Department of Engineering Services, Richard Vacchio, Senior Building Inspector in the Town Department of Engineering Services, Terry McNally, Town Chief Fire Marshall, Kenneth Lindahl, former Director of the Town Public Safety Department, and Janet Rinker, a Division Head in the Town Department of Public Safety (collectively, the "Defendants"). In the adversary proceeding, the Trustee seeks recovery of damages from the Defendants under a variety of legal theories, based on allegations that the Defendants' actions leading up to and including the placement of a placard prohibiting anyone from entering a certain building owned by Thatched LP due to allegedly unsafe conditions derailed the scheduled sale of the Debtors' properties, causing injury to the Plaintiff as representative of the Debtors' estates. The Defendants filed a motion ("Motion") under Fed. R. Civ. P. 12(b)(6) to dismiss all of the causes of action set forth in the complaint. The arguments raised by the Defendants in the Motion generally fall into two categories: either the placement of the placard had little impact on the real property, was essentially an administrative

act and was not a basis of the prospective purchaser's failure to close, and caused no actionable injury to the Debtors' estates, or the condition of the property was such that the placement of the placard forbidding anyone from entering the property under penalty of imprisonment and possible monetary fines was necessary to safeguard the citizens of Huntington from the imminent danger presented by the condition of the building on the Debtors' property. These arguments are inherently inconsistent and these contradictory assertions raise more questions than they resolve. In addition, the Defendants urge the Court to view the causes of action against the factual context upon which the actions were taken, while at the same time basing their arguments on the premise that the placement of the placard was the culmination of a series of lawful acts taken by the Defendants. From this, the Defendants conclude that their actions, whether they caused harm or not, cannot be actionable. However, the gravamen of the complaint is that the Defendants acted in violation of the applicable regulations promulgated by the Town of Huntington. Dismissal of the complaint is not appropriate where the facts as alleged in the complaint support a plausible nexus between those acts, which are alleged to be unlawful, and the harm suffered by the Plaintiffs. The Court agrees with the Defendants that the factual context matters, and therefore dismissal of the claims for tortious interference with contractual relations, negligence, and 42 U.S.C. § 1983 violations, without having a more complete factual record, is inappropriate.

For the reasons set forth more fully below, the Motion is granted without prejudice as to the First Cause of Action, and is denied as to the remaining causes of action.

**FACTS**

Prepetition, Thatched LP was the owner of real properties located at 445 East Main Street, Centerport, NY ("445 East Property"), and the adjacent parking lot located on Route 25A, Centerport, NY ("Lot") (the Lot, along with the 445 East Property, are referred to as the "Real Properties"). A catering banquet facility, operated by Joe's Friendly, was located on the 445 East Property. On January 2, 2014, ("Petition Date") the Debtors filed separate voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. On January 10, 2014, the Court entered an Order authorizing the joint administration of the Debtors' cases. On March 11, 2014, the Debtor filed an application to employ Gino Scotto as Chief Restructuring Officer and/or as manager of the Debtors and of Hospitality Credit, LLC as Restructuring and Financial Advisors to the Debtors, which was amended on March 12, 2014 (collectively, the "Scotto Retention Application"). By letter entered on the docket on March 18, 2014, the Scotto Retention Application was withdrawn. By order entered on April 4, 2014, the Court approved a Management Services Agreement between the Debtors and Hospitality Credit, LLC, to permit Hospitality Credit, LLC to manage the catering facility. Gino Scotto executed the Management Services Agreement as a managing member of Hospitality Credit, LLC. By notice dated July 4, 2014, the Trustee was appointed as the Chapter 11 Operating Trustee. On June 24, 2015, the Debtors' cases were converted to Chapter 7 of the Bankruptcy Code. By notice dated June 24, 2015, the Trustee was appointed as the interim Chapter 7 trustee, and is now the permanent Trustee.

On July 24, 2014, the Trustee filed a motion to approve the form of notice and bidding procedures for a proposed sale of the Real Properties pursuant to Section 363(b) of the Bankruptcy Code ("Bidding Procedures Motion"). At a hearing held on August 4, 2014, the Court approved the Bidding Procedures Motion, and by order entered on August 11, 2014, the

Court authorized a public sale of the Real Properties. A public auction of the Real Properties was held on September 24, 2014, at which Yama Raj ("Raj") was the highest bidder at $4,650,000 plus a buyer's premium of $186,000, for a total of $4,836,000. Raj had provided the Trustee with a total deposit in the amount of $651,000, which was non-refundable. BFCU submitted a credit bid in the amount of $4,600,000.which was deemed the second-highest bidder, and became the back-up bid. On September 24, 2014, the Trustee filed a motion ("Carve-out Motion") for approval of a stipulation between the Trustee and BFCU authorizing a carve-out for the Trustee and his professionals from BFCU's collateral. The Carve-out Motion provides that if BFCU credit bids, it must agree to pay a carve-out in the amount of $250,000 to the Trustee, which shall be held in a separate account, to be paid to the Trustee and his professionals upon further order of the Court.

On September 24, 2014, Raj executed the Terms and Conditions of Sale ("Terms and Conditions") and Memorandum of Sale ("Memorandum of Sale") confirming the purchase price of $4,836,000 and confirming the non-refundable partial deposit in the amount of $350,000. The Terms and Conditions provide, in pertinent part, as follows:

> 11. There is no contingency of any kind or nature that will permit the Successful Bidder(s) to withdraw their bid, cancel the Bidding Procedures and receive a return of the Deposit(s) other than the Trustee's inability to deliver insurable title to the Real Properties, or for the Centerport Property or the Lot, whichever is applicable. . . .
>
> 16. The Real Properties are being sold "AS IS" "WHERE IS", "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature [and] the sale of the Real Properties are subject to, among other things, . . . any building or zoning ordinances or other applicable municipal regulations and violations thereof [and] [t]he Real Properties will be sold subject to any and all violations or conditions requiring corrective action.

On September 29, 2014, a hearing was held to approve the terms of the sale of the Real Properties to Raj, which was granted. The catering facility ceased operations on October 6, 2014, and the doors of the catering facility were locked days later. On November 7, 2014, the Court so-ordered the relief sought in the Carve-out Motion. The closing of the sale was to occur on or before November 15, 2014. The Trustee consented to an extension of the closing date to November 24, 2014, at the request of Raj. On November 20, 2014, a placard ("Placard") was placed by the Town on the building ("Building") located on the 445 East Property. The Placard declared the Real Properties unsafe and unfit for human habitation pursuant to the Town Code, and declared occupancy of the Building or any part thereof to be unlawful. Violators would be subject to a $51,000 maximum fine, six months of imprisonment, or both. Ex. E., Motion ("Motion to Vacate Sale Order") to Vacate Order dated Oct. 16, 2014 Which Confirmed the Trustee's Auction for Sale of the Real Property. Thereafter, Raj advised the Trustee that he no longer wished to proceed with the purchase of the Real Properties. On December 12, 2014, Raj filed the Motion to Vacate Sale Order, in which Raj sought, *inter alia*, return of the deposit and rescission of the contract of sale based on two theories, one being the existence of the Placard on the Building. The Motion to Vacate Sale Order was opposed by the Trustee and BFCU. The relief requested in the Motion to Vacate Sale Order was denied in its entirety at a hearing held on January 7, 2015. On January 5, 2015, Raj appealed the Order denying the Motion to Vacate Sale Order, and by Final Memorandum Decision and Order dated August 21, 2015, the Order denying the Motion to Vacate Sale Order was affirmed by the District Court for the Eastern District of New York. In the meantime, on June 24, 2015, the Debtors' cases were converted to Chapter 7.

On February 16, 2016, the Trustee commenced this adversary proceeding against the Defendants to recover damages stemming from the acts taken by the Defendants from the date of

the public auction sale of the Real Properties on September 24, 2014 to the date the Placard was placed on the Real Properties on November 20, 2014. The First Claim for relief is for damages incurred as a result of the Defendants' willful violation of the automatic stay in placing the Placard on the Debtor's real property. The Second Claim for relief is for damages incurred from the Defendants' tortious interference with contractual relations between the Debtor and Raj. The Third Claim for relief is for damages incurred from the Defendants' negligence in placing the Placard. The Fourth Claim for relief is for damages incurred as a result of the Defendants' violation of the Debtor's rights under 42 U.S.C. § 1983. The Fifth Claim for relief is for attorneys' fees pursuant to 42 U.S.C. in the event the Trustee is the prevailing party on the Fourth Claim.

The Complaint alleges as follows:

On October 16, 2014, a local paper, The Observer, published an article referencing two reports prepared by Galli Engineering, P.C. entitled "Thatched Cottage Still Racked by Hurricane Sandy." On October 23, 2014, the Concerned Citizens of Centerport sent a letter to the Town concerning extensive storm damages to the Real Property, which was received by the Town Engineering Services Department on October 29, 2014. On November 7, 2014, the Concerned Citizens of Centerport sent another letter to the Town, which was received by the Engineering Services Department on November 13, 2014. The November 7, 2014 letter referenced the October 16, 2014 article published in the Observer. At the request of Raj, the closing date was extended from November 15, 2014 to November 24, 2014. On November 13, 2014, Ralph Colamussi, the 99% shareholder of Thatched LP and the 100% owner of the shares of Joe's Friendly, personally delivered certain reports, letters and emails to the Town Fire Marshall's Office, including the article published in the Observer. Among the documents were

the two engineering reports prepared by Galli Engineering, P.C. on July 29, 2014 and August 15, 2014. The two engineering reports were prepared at the request of Gino Scotto, as according to the Complaint, Scotto was interested in bidding on the Real Properties. Without the permission or knowledge of the Trustee, Scotto and Galli Engineering, P.C. had entered the Real Properties on July 29, 2014 for the purpose of permitting Galli Engineering, P.C. to inspect the Real Properties. Galli Engineering, P.C. reported its findings to Scotto before finalizing its initial report. Galli Engineering, P.C. trespassed onto the Real Properties again on August 15, 2014 to conduct a second inspection of the Real Properties and thereafter issued a second report. Galli Engineering, P.C. met with Scotto and Colamussi to discuss the findings and the Real Properties. On November 14, 2014, the Galli Engineering, P.C. reports and the Observer article were forwarded to Joseph Cline. Thereafter, Cline, Terry McNally and Richard Vacchio met to discuss the documents and the Real Properties. At that meeting, all three decided to place the Placard at the Building. On November 18, 2014, Raj's counsel e-mailed Town Deputy Attorney Glascock and reported to him that he had spoken to Cline about the items of concern in the Galli Engineering, P.C. report and Raj already had an engineer inspect the Building. Raj stated he was prepared to make repairs to satisfy the Town's concerns, the Galli Engineering, P.C. report overstated the conditions existing at the Real Properties, and Raj was prepared to incorporate language into any license agreement with the Town to address the Town's concerns.

On November 20, 2014, Vacchio affixed the Placard on the Building. Vacchio was at the Real Properties for a few minutes solely to place the Placard, and did not conduct any inspection at that time. Vacchio completed an inspector's report stating, "[d]ue to Engineers certificate and reports from more than one firm. Structural integrity is questionable. Not to be used or occupied until further notice." The Town did not advise the Plaintiff of the existence of the reports and

letters or provide copies of the reports and letters to the Trustee until December 18, 2015. Raj declined to proceed with the sale scheduled for November 24, 2014. As a result of the placement of the Placard and Raj's failure to close, the Plaintiff was compelled to maintain and secure the Real Properties until January 2, 2015, when title to the Real Properties was conveyed to the nominee of the back-up bidder, BCFU. After placing the Placard on the Building, the Town took no further steps with respect to the Real Properties, and did not provide notice to the Plaintiff regarding any violation, did not issue any summons, or provide notice to the Plaintiff that he should remove, remedy or abate any unsafe, hazardous or dangerous condition or nuisance existing at the Real Properties. There was no administrative hearing prior to or after placement of the Placard, and the Town Board never made any public findings that the Real Properties had become unsafe, unsanitary or hazardous. The Town failed to follow any of the procedures set forth in the Town Code before placing the Placard. No structural repairs have been made to the Real Properties since the placement of the Placard, nor has the catering facility collapsed since the placement of the Placard over one year ago.

**DISCUSSION**

A motion to dismiss a complaint requires a determination of whether the complaint properly states a claim under Rule 8. Rule 8 requires a plaintiff to include in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 668, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Fed. R. Civ. Pro c. 8(a)(2)).

The Supreme Court underlined two working principles applicable to a court's evaluation of a Rule 12(b)(6) motion in two seminal cases: *Iqbal* and *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555–56, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  First, the principle that "a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A recitation of the elements of a cause of action, supported by mere conclusory statements is not sufficient.  *Id.* (citing *Twombly*, 550 U.S. at 555).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555).  "Determining whether a complaint states a plausible claim for relief…is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 678-79.  However, the "pleadings must create the possibility of a right to relief that is more than speculative."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  A complaint has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

With these principles in mind, the Court will evaluate the causes of action to determine whether they pass muster under Rule 12(b)(6).  Pursuant to the First Cause of Action, the Plaintiff seeks damages from the Defendants based on their willful violation of the automatic stay in placing the Placard on the Building.    Section 362(k) provides as follows:

> (k)(1) Except as otherwise provided in paragraph (2) [which is not applicable in this case], an individual injured by any willful violation of a stay provided in this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k).

The Defendants correctly point out that because the Trustee is not acting in an individual capacity but represents the Debtor corporations, he may not seek relief under § 362(k). Section 362(k) applies solely to individuals, and does not extend to entities like the Debtors, which are a

limited partnership and a corporation. *Maritime Asbestos Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.*), 920 F.2d 183, 186-87 (2d Cir. 1990); *McCord v. Sofer (In re Sofer*), 507 B.R. 444, 451 (Bankr. E.D.N.Y. 2014). For debtors other than individuals, their rights can be redressed through contempt proceedings or similar proceedings under § 105(a), Bankruptcy Rule 9020 and the Court's inherent authority to redress violations of the automatic stay. *In re Chateaugay Corp.*, 920 F.2d at 187. Therefore, the Court concludes that the First Cause of Action shall be dismissed pursuant to Rule 12(b)(6) on the basis that § 362(k) does not apply to the Debtors. This ruling is without prejudice to permit the Trustee to re-plead the First Cause of Action in accordance with this ruling.

The Second Cause of Action seeks damages based on the allegation that the Defendants tortiously interfered with the contractual relations between the Debtors and Raj. The Plaintiff and the Defendants agree that under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a third party's breach of the contract; (4) actual breach of the contract; and (5) damages resulting therefrom. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (other citations omitted). The Defendants assert that this cause of action must be dismissed because 1) the Trustee fails to allege that the Defendants were the "but for" cause of Raj's breach of the Memorandum of Sale, 2) this claim is barred by judicial estoppel, and 3) the Debtors suffered no damages as result of Raj's breach of the Memorandum of Sale. Both parties agree that the complaint must allege that there would not have been a breach but for the activities of the Defendants. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990). The economic self-interest of the breaching party that evidences a predisposition to breach the

contract does not affect the "but for" causation. *Antonios A. Alevizopoulos and Assoc's, Inc. v. Comcast Intern. Holdings, Inc.*, 100 F. Supp.2d 178, 186-187 (S.D.N.Y. 2000). "The critical inquiry . . . is whether the breaching party would have breached its obligations without the involvement of the interfering party." *Id.* At 187. The Defendants claim that the Complaint does not clearly allege "but for" causation, in that it merely states that "[t]he placement of the Placard produced the desired result as [Raj] breached the Contract." Memorandum of Law by Defendants in Support of Motion to Dismiss. In addition, the Defendants assert that the Complaint does not allege "but for" causation for each individual defendant and fails to allege that the Defendants acted in concert to cause the breach.

Upon close examination of the allegations in the Complaint, the Court finds that it sufficiently alleges that but for the placement of the Placard, Raj would not have breached the Memorandum of Sale. The complaint states in relevant part:

> "Upon information and belief, the Defendants were aware or should have known that placement of the Placard on the Real Properties would . . . cause [Raj] to breach the Contract. The placement of the Placard produced the desired result as [Raj] breached the Contract by refusing to close on the sale of the Real Properties."

Complaint, ¶146, 147.

The Trustee clearly states in the Complaint that the placement of the Placard was the reason Raj breached the Memorandum of Sale. To the extent there was any lack of clarity on this point, the Trustee reiterated at the hearing on the Motion that but for the placement of the Placard, Raj would have closed on the sale of the Real Properties.

As for whether the Complaint adequately alleges "but for" causation as to each defendant, the pleadings spell out a targeted effort by the Defendants to place the Placard on the

Building. While the Complaint is not long on specifics as to each individual defendant's role, it meets the requirements of a short and plain statement of the facts under Rule 8.

The Defendants also claim there is no "but for" causation based on Raj's purported reason for failing to close as set forth in the Motion to Vacate Sale Order. In the Motion to Vacate Sale Order, Raj gave two reasons for failing to close; the sale did not include a four-foot swath of waterfront from the waterline and back, which was owned by the Town, and the Town had declared the Building "unsafe" and prohibited occupancy. Raj's proffered reasons for backing out of the sale at a prior hearing shall not be taken as the actual reason why Raj did not close. Raj sought to present to the Court a reason that would not run afoul of the language in the Memorandum of Sale that severely restricted his right to cancel the sale and obtain the return of his deposit. Raj's carefully crafted arguments shall not be mistaken for a fact this Court must accept in this adversary proceeding.

The second argument raised by the Defendants is based on the theory that judicial estoppel applies to bar the Trustee from taking a position that is inconsistent from the arguments the Trustee raised in opposition to the Motion to Vacate Sale Order. According to the Defendants, the Trustee should be precluded from asserting that the Placard was the proximate cause of Raj's breach as it is contrary to the Trustee's position that Raj had an obligation to close the sale regardless of the Placard. This argument is without merit and does not warrant dismissal of the Second Cause of Action. First, as the Defendants acknowledge, judicial estoppel is an affirmative defense, and in general, affirmative defenses are not appropriate grounds to dismiss a claim under Rule 12(b)(6). Second, judicial estoppel does not even appear to apply in this case. Judicial estoppel "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v.*

*Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). The Trustee previously argued to the Court that the Placard did not excuse Raj from closing, as pursuant to the Terms and Conditions, the sale was "as is" and subject to any violations or conditions. At the hearing on the Motion to Vacate Sale Order, the Trustee raised a host of possible reasons why Raj failed to close, but it was not for the purposes of determining why Raj failed to close. It was only to establish that Raj was not entitled to obtain his deposit back under the Terms and Conditions and the Memorandum of Sale. It is not inconsistent for the Trustee to argue on the one hand that the Placard proximately caused Raj to breach the Memorandum of Sale, and to argue, on the other hand, that Raj had no legal basis to obtain the return of the deposit.

The Defendants' last argument for dismissal of the Second Cause of Action is that even if the Trustee properly pled that the placement of the Placard was the proximate cause of Raj's breach, the Debtors' estate suffered no damages as a result of Raj's breach. The most the Debtors' estate could have obtained from the sale of the Real Properties was $250,000 pursuant to a carve-out agreement with BFCU. This amount was not reduced once Raj refused to close, as BFCU agreed to provide the carve-out if it was the successful bidder. Therefore the Defendants reason that Raj's breach did not cause the Trustee any economic harm. However, the Trustee has alleged monetary damages based on costs incurred in opposing the Deposit Turnover Motion and the appeal to the District Court, as well as the costs of maintaining the Real Properties for the time period between the proposed closing with Raj and the actual turnover of the Real Properties to BFCU. While the Defendants may quibble with the relatively small dollar amount of damages, the Trustee has alleged quantifiable damages flowing from the breach of the Memorandum of Sale. Therefore, the Second Cause of Action shall not be dismissed.

The Third Cause of Action seeks damages for the Defendants' negligence in the placement of the Placard on the Building. Specifically, the Complaint alleges that "[t]he Defendants' breach of duty of care to the Plaintiff and placement of the Placard on the Real Properties was the proximate cause of [Raj's] refusal to take title to the Real Properties and cancellation of the Contract." In order to state a claim for negligence under New York law, the plaintiff must allege that "the defendant owed the plaintiff a cognizable duty of care, the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *Russell v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997). The Defendants seek dismissal of this cause of action on several grounds. First, the Plaintiff only seeks economic damages under this claim, and according to the Defendants, New York law does not recognize negligence claims which cause solely economic damages. The Defendants point out that the Complaint does not allege that the Defendants damaged the Real Properties when it placed the Placard, not does the Complaint allege that the placement of the Placard caused personal injuries to any individuals. In addition, the Defendants claim that the Debtors' estates' suffered no damages as a result of Raj's breach. Finally, the Defendants allege that the negligence claim is barred because there is no governmental liability for negligence in the performance of discretionary acts. Since the act of placing the Placard, including determining whether to place the Placard, was a discretionary act, and there is no special relationship between the Plaintiff and the Defendants, there can be no liability for these acts under applicable law.

The Court has already determined that the Plaintiff properly pled damages flowing from the Defendants' actions, which include the costs of defending the Motion to Vacate Sale Order and the appeal, along with the costs of maintaining the Real Properties between the time the sale to Raj was to have taken place and the Real Properties were turned over to BFCU. As for

whether this cause of action should be dismissed because of a failure to allege damage to persons or property of the Debtors' estates, such relief is not warranted under applicable law. The Court of Appeals of New York has ruled that under New York law, negligence claims based solely on economic loss may fall outside the scope of the duty owed by the defendant. *See 532 Madison Ave. Gourmet Goods, Inc. v. Finlandia Center, Inc*., 96 N.Y.2d 280 (C.A.N.Y. 2001) (Negligence claims for loss of income alleged by businesses located in the same neighborhood as a building that partially collapsed dismissed). In *532 Madison Ave. Gourmet Goods, Inc*., the Court of Appeals recognized that while injury to the neighboring businesses and individuals was foreseeable, the landowner did not owe a duty to the thousands of professional, commercial and residential tenants situated near the defendant's buildings. *Id*. at 291. This has been called the "economic loss rule." *Hydro Investors, Inc. v. Trafalgar Power, Inc*., 227 F.3d 8, 14 (2d Cir. 2000). The Defendants recognize at least one exception to the economic loss rule with respect to many types of malpractice actions. *Id*. at 18. While the Defendants urge the Court to apply the economic loss rule to bar the Plaintiff's negligence claim, its applicability to the facts as alleged is far from clear. As one court discussing *532 Madison Ave. Gourmet Goods, Inc.* recognized, "[o]ne weighty factor in that case was the potential for broadly expansive liability to an indeterminate class of persons" that did not apply to the case before the Court. *Alaimo v. Town of Ft. Ann*, 63 A.D.2d 3d 1481, 1482 (3d Dep't. 2009). In *Alaimo*, the Court upheld the lower court's decision denying the Town of Fort Ann's motion to dismiss a negligence claim alleged by upstream property owners who temporarily lost the use of a pond due to failures in the dam that created the pond. The Appellate Court agreed with the lower Court, and held that the universe of plaintiffs was much smaller and more defined than the plaintiffs in the *532 Madison Ave. Gourmet Goods, Inc*. case. Therefore, the policy concerns set forth by the New York Court

of Appeals in *532 Madison Ave. Gourmet Goods, Inc*. were not present in the *Alaimo* case. *Id*. In addition, the temporary loss of use of the pond by the plaintiffs, who paid a special tax to maintain the dam, could give rise to a cognizable claim for property loss. *Id*. at 1483, 1484. The Court agrees with the Court in *Alaimo*, and the facts are sufficiently similar at this point to warrant denial of the motion to dismiss the Third Cause of Action. Similar to the *Alaimo* case, the potential number of plaintiffs is defined. The only parties alleging injury based on the Defendants' conduct are the Trustee and BFCU. Like the plaintiffs who temporarily lost the use of the pond in *Alaimo*, the Plaintiff was deprived of its use of the Building due to the alleged acts of the Defendants. The Placard prohibited entry into the Building under penalty of imprisonment, a fine, or both. The Trustee's inability to gain access to the Building as a result of the Placard constituted a cognizable loss of property rights, which according to the Complaint precipitated Raj's breach of the Memorandum of Sale.

As for the argument that the acts surrounding the placement of the Placard were discretionary and therefore the Defendants are immune from suit based on these acts, the Court needs more facts to determine the nature of the Defendants' acts. It is not clear from the Defendants' arguments what the proper procedures were for deciding to place the Placard. Until these facts are known, it is inappropriate to conclude that the acts were in compliance with applicable procedures, let alone whether they were discretionary.

The Fourth and Fifth Causes of Action are premised on damages arising from violations of the Trustee's rights under 42 U.S.C. § 1983. According to the Defendants, these causes of action fail because there was no deprivation of the Truste's constitutional rights, whether under procedural due process, equal protection rights, or substantive due process grounds. The Complaint alleges that the estates' procedural due process rights were violated based on the

manner in which the Placard was placed on the Real Properties. In order to plead a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege 1) a constitutionally protected interest; and 2) that it failed to receive adequate process before being deprived of that interest. *Harhay v. Town of Ellington Bd. of Ed*, 323 F.3d 206, 212 (2d Cir. 2003). The Defendants assert that the placement of the Placard caused no deprivation or interference with a protected property interest of the Debtors because the Debtors' business had ceased, the Real Properties were vacant and the placement of the Placard did not excuse Raj from closing under the terms of the Memorandum of Sale. However, as stated above, the Trustee lost access to the Building from the moment the Placard was affixed, and the Complaint properly alleges a claim based on deprivation or interference with the Real Properties without procedural due process.

As for the equal protection violation claim, the Defendants seek dismissal because the Plaintiff failed to show how others similarly situated were treated. In addition, the Plaintiff fails to allege facts demonstrating that any such selective treatment was based on impermissible considerations. In order to allege a claim under the Equal Protection Clause, a plaintiff must claim 1) compared with others similarly situated, the plaintiff was selectively treated adversely, and 2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith or intent to injure a person. *Miner v. Clinton County*, 541 F.3d 464 (2nd Cir. 2008). A review of the Complaint reveals that the Trustee alleges the Real Properties are the only properties in recent years where a placard has been placed without a Town code enforcement office having first conducted his or her own inspection. This exemplifies the different treatment given with respect to the Real Properties. The allegations of the Complaint include sufficient claims that the

Defendants acted with the intent to inhibit or punish the exercise of constitutional rights, or with malicious or bad faith or intent to injure the Debtors.

Lastly, in order to establish a substantive due process claim, the plaintiff must allege a valid property interest (which the Trustee has satisfied), and that the defendant has acted in an arbitrary, conscience shocking or oppressive manner in depriving the plaintiff of that interest. *Hampton Bays Connections, Inc. v. Duffy.*, 127 F. Supp.2d 364 (E.D.N.Y. 2001).  The Defendants state in a conclusory manner that the Complaint does not contain allegations of conduct that is sufficiently arbitrary, shocking to the conscience or oppressive.  To the contrary, the Court finds that the Complaint contains sufficient allegations (that there were no open violations on the Real Properties, that the catering hall was closed, that the Placard was placed without inspecting the Real Properties, and that the sale of the Real Properties was closing imminently) to meet the required standard.  There appears to have been no basis to place the Placard prior to the Town conducting its own inquiry and examination of the Real Properties, which raises the issue of whether the Plaintiff's substantive due process rights were violated. Because the Trustee has stated a claim for the Fourth Cause of Action, the Fifth Cause of Action pursuant to 42 U.S.C. § 1988 for attorneys' fees in the event the Trustee prevails on the Fourth Cause of Action shall not be dismissed.

The final two points raised by the Defendants are that the Town employee defendants are entitled to absolute immunity because the acts complained of were discretionary, and that the claims against Cline and Vecchio in their individual capacities must be dismissed because no specific claims are stated with respect to these individuals.  The Defendants correctly state that under New York law, the discretionary acts of town employees are entitled to governmental immunity when they are performing governmental functions.  *Shah v. Town of Islip*, 2011 N.Y.

Misc. LEXIS 2092 (Sup. Ct.Suffolk 2011). However, it is not clear whether the acts cited in the Complaint were discretionary. As for the claims against Cline and Vecchio in their individual capacities, Cline and Vecchio are alleged to have played pivotal roles in the actions complained of by the Trustee. To establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (other citations omitted). The Trustee alleges that Cline and Vecchio abused their authority by ignoring their statutory duties and causing the placement of the Placard on the Building, which deprived the Trustee of a protected right. To the extent they acted in violation of Town policy, they may be liable to the Trustee. Until there is a clear picture of the respective roles and conduct of these individual defendants, the claims shall not be dismissed.

**CONCLUSION**

The Motion is granted as to the First Cause of Action and the First Cause of Action is dismissed without prejudice to re-plead. The Motion is denied as to the remaining causes of action. The Court shall issue an Order consistent with this Memorandum Decision.

**Dated: Central Islip, New York**
**June 1, 2016**

**Robert E. Grossman**
**United States Bankruptcy Judge**